UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| CASEY JAMES FURY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 2:12-cr-00186-GZS |
| | ) | 2:14-cv-00093-GZS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

In this action, Petitioner Casey James Fury, who pled guilty to setting two fires at the Portsmouth Naval Shipyard, moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence. (Motion, ECF No. 48.)

In support of his motion, Petitioner asserts ineffective assistance of counsel based on the following grounds: (1) failure to pursue a witness who would attest that Petitioner was not present at one of the fires; (2) improper advice to waive indictment; (3) improper advice as to the mens rea element of the crimes; (4) failure to secure a psychological evaluation of Petitioner for pretrial detention and sentencing purposes; and (5) failure to request a downward variance at sentencing. Petitioner subsequently moved to add a sixth ground of ineffective assistance of counsel based on his counsel's alleged failure to inform Petitioner of an anonymous letter that was addressed to Petitioner's father, in which letter the author stated that Petitioner's supervisor harbored an animus toward Petitioner and had targeted him for firing. (Motion, ECF No. 60; Attachment, ECF No. 60-1.) The Government requested that Petitioner's section 2255 motion be summarily dismissed. (Response, ECF No. 62.)

As explained below, following a review of the pleadings, and after consideration of the parties' arguments, the recommendation is that the Court deny Petitioner's motion to add a new ground (ECF No. 60), and dismiss Petitioner's section 2255 motion (ECF No. 48).

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The prosecution version, which at his plea hearing Petitioner acknowledged was true to his personal knowledge, states the following about the crimes:

Petitioner was employed as a civilian painter and sandblaster at the Portsmouth Naval Shipyard and worked on the overhaul of the USS Miami, which was a United States Navy Los Angeles Class attack submarine.  (Prosecution Version, ECF No. 26 at 1; Plea Tr., ECF No. 37 at 18.)

On May 23, 2012, at approximately 5:30 p.m., Petitioner set fire to a plastic bag containing cotton rags in a stateroom on the submarine.  (Prosecution Version at 1.)  At the time, 50 shipyard workers were aboard.  (*Id.*)  Crew members, as well as firefighters from the Portsmouth Naval Shipyard and numerous local fire departments fought the fire for about twelve hours, and five first responders were injured.  (*Id.* at 1-2.)

On June 16, 2012, at approximately 7:00 p.m., Petitioner set a fire in a dry dock cradle on which the USS Miami rested.  (*Id.* at 2.)  That fire caused little or no damage, but resulted in a complete evacuation of the submarine.  (*Id.*)

On June 19, 2012, Petitioner falsely pulled a fire alarm in the dry dock area, causing another evacuation.  (*Id.*)

On July 18, 2012, in an interview with Naval Criminal Investigative Service agents, Petitioner confessed to starting the June 16 fire and to perpetrating the June 19 false alarm.  (*Id.*) Petitioner stated that he started the June 16 fire with a lighter and alcohol wipes because he felt

anxious and wanted to leave work early.  (*Id.*)  In oral and written statements to agents on July 19, 2012, Petitioner admitted that he started the May 23 fire, citing the same reason−that he felt anxious and wanted to leave work early.  (*Id.* at 3.)  Petitioner also accompanied agents on videotaped walkthroughs of the USS Miami and another similar submarine to describe where and how he set the May 23 fire.  (*Id.*)  In addition, he participated in a separate videotaped walkthrough during which he described his involvement in the June 16 fire on the dry dock.  (*Id.*)  Petitioner's account of the May 23 fire was consistent with the results of a fire scene examination conducted by a certified fire investigator with the Bureau of Alcohol, Tobacco, Firearms and Explosives. (*Id.*)

Petitioner was arrested on July 23, 2012, on a two-count complaint.  (Complaint, ECF No. 1.)  Count I alleged that Petitioner willfully and maliciously set fire to the USS Miami on May 23, 2012, and Count II alleged that he willfully and maliciously set fire to materials and supplies located in and around the USS Miami on June 16, 2012.  (*Id.*)  Both counts charged that Petitioner's conduct was in violation of 18 U.S.C. § 81.

Petitioner entered into an agreement to waive indictment and plead guilty to both counts of an information.  (Waiver, ECF No. 22; Information, ECF No. 23; Plea Agreement, ECF No. 27, Minute Entry, ECF No. 29.)  The plea agreement provided that Petitioner understood that he could be sentenced to a term of up to life in prison on Count I and up to twenty-five years on Count II. (Plea Agreement, ECF No. 27 at 1-2.)  Petitioner and the Government agreed to make a non-binding recommendation that the base offense level be set at 37; that it be increased by two levels for conscious or reckless risk of death or serious injury, pursuant to U.S.S.G. § 2B1.1(b)(14)(A); and that it be decreased by three levels for Petitioner's acceptance of responsibility, pursuant to § 3E1.1, for a total offense level of 36.  (*Id.* at 2-3.)  The parties also agreed to recommend a criminal

history category of I, which, together with the total offense level, would yield an advisory sentencing guideline range of 188-235 months of imprisonment. (*Id.* at 3.) Petitioner agreed to waive the right to appeal his guilty plea and any other aspect of his conviction, and he also agreed to waive his right to appeal from any sentence that did not exceed 235 months. (*Id.* at 4.) Petitioner pled guilty at a Fed. R. Crim. P. 11 hearing held in November 2012. (Plea Tr., ECF No. 37 at 1-2, 12.)

On March 15, 2013, the Court sentenced Petitioner to a term of 205 months of imprisonment on each count, to be served concurrently, followed by five years of supervised release. (Judgment, ECF No. 45.) The Court determined the sentence as follows: Consistent with the plea agreement and the revised presentence investigation report, to which Petitioner did not object, the Court found that under the sentencing guidelines, due to the risk of death and serious injury and the $200-400 million property loss, Petitioner's adjusted offense level for Count I was 39. (Plea Agreement, ECF No. 27 at 2-3; Sentencing Tr., ECF No. 59 at 3-4, 60.) *See* U.S.S.G. §§ 2K1.4(a)(4), 2B1.1(a)(1), 2B1.1(b)(1)(O), 2B1.1(b)(14)(A).[1] The base offense level for Count II was 24, and thus the sentence was determined based on Count I. (Sentencing Tr. at 60.) The Court found that Petitioner had accepted responsibility, which lowered the offense level by three points, for a total offense level of 36. (*Id.*) The Court also determined that Petitioner had a criminal history category of I, which, together with the total offense level of 36, yielded an advisory guideline range of 188-235 months. (*Id.*) Consistent with the plea agreement, neither Petitioner nor the Government objected to the advisory range. (*Id.* at 60-61.)

---

[1] The Court noted that the $200-400 million property loss increased the offense level considerably. (Sentencing Tr., ECF No. 59 at 33.) *See* U.S.S.G. § 2B1.1(b)(1)(O) (applying a 28-level increase to the base offense calculation for property damage of more than $200 million).

The Court then considered the sentencing factors and concluded that the most important factors in the case were the nature and circumstances of the offense, Petitioner's history, the seriousness of the offense, the need to promote respect for the law, the need for just punishment, and the need for general deterrence.  (Sentencing Tr. at 61.)  The Court also took into account Petitioner's history of mental illness as a sentencing factor and noted specifically that Petitioner's mental health history was one of the factors that led the Court to conclude that a sentence in the middle of the guidelines range was appropriate.  (*Id.* at 63, 65.)

Petitioner asserts that he timely signed and placed his section 2255 motion in the prison mailing system on March 10, 2014.  (Motion at 14.)  The petition was filed on March 13, 2014. (*Id.* at 1.)

## II.    DISCUSSION

### A.  Legal Standard

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; and (4) that the sentence "is otherwise subject to collateral attack."  28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).[2]  Here, given that Petitioner alleges ineffective assistance of counsel, and given that Petitioner's right to counsel is guaranteed by the Sixth Amendment, Petitioner argues that the sentence was imposed in violation of "the Constitution or laws of the United States."

---

[2] Title 28 U.S.C. § 2255(a) states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When a claim is procedurally defaulted because it was not raised in a direct appeal, it may not be raised in a section 2255 motion unless the petitioner demonstrates either cause and prejudice, or, alternatively, that the petitioner is actually innocent. *See Bousley v. United States*, 523 U.S. 614, 622 (1998); *Damon v. United States*, 732 F.3d 1, 4 (1st Cir. 2013).

On a claim of ineffective assistance of counsel, a petitioner "must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (holding that "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). The two prongs of the ineffective assistance test are commonly referred to as the "cause" and "actual prejudice" tests. *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir. 2011). The "cause" test is "a 'fairly tolerant' one because 'the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense.'" *Moreno-Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012) (quoting *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994)). The issue is whether counsel's performance was "'within the wide range of reasonable professional assistance' that a competent criminal defense counsel could provide under 'prevailing professional norms.'" *Bucci*, 662 F.3d at 30 (quoting *Strickland*, 446 U.S. at 688-89).

6

A district court that reviews such claims is not required to address both prongs of the test because a failure to meet either prong will undermine the claim. *Strickland*, 466 U.S. at 697. "Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954).

## B. Grounds Asserted and Analysis

### 1. Claim of ineffective assistance of counsel regarding failure to pursue a witness (Ground One).

Petitioner contends that counsel was ineffective because he failed to pursue, as a possible defense witness, an unnamed person who purportedly would attest that Petitioner was not present at one of the fires that Petitioner allegedly set. (Motion at 4.) Petitioner alleged in his section 2255 motion that counsel did not pursue this witness after the witness expressed mild apprehension about coming forward. (*Id.*)

The Government argues that Petitioner's claim fails in part because Petitioner did not identify the witness, specify the fire about which the witness would testify, or provide any details about the testimony. (Response at 22.) In his reply, Petitioner identifies the witness and alleges that the witness would testify that he was working with Petitioner when the first fire started. (Reply, ECF No. 64 at 2.) Petitioner maintains that counsel contacted the witness, but did not interview or subpoena him because the witness was "going through a hard time." (*Id.*)

Petitioner cannot prevail on this claim. Petitioner had confessed to starting both fires, and the confession was corroborated by other evidence from the fire investigation. The suggested alibi

7

testimony would have been contrary to Petitioner's confession, and thus counsel's decision not to pursue the witness was understandable.  Petitioner, therefore, cannot establish that counsel's performance was substandard.

Furthermore, Petitioner cannot demonstrate prejudice because (1) Petitioner does not allege that if counsel had procured the witness, Petitioner would not have pled guilty;[3] and (2) it would not be unreasonable to conclude that if Petitioner had gone to trial, he would not have received the three-point reduction for acceptance of responsibility, and thus the advisory sentence range would have been higher and his term of imprisonment likely longer.  *See* U.S.S.G. § 3E1.1, comment n.2.

### 2.   Claim of ineffective assistance of counsel regarding improper advice to waive indictment (Ground Three).

Petitioner alleges that his counsel improperly advised him to waive the indictment and plead guilty to an information.  (Motion at 7.)  As part of this claim, Petitioner contends that "essential elements of the charge were presented as enhancements to the 'preponderance of the evidence' standard in a plea agreement as opposed to a jury beyond a reasonable doubt."  (*Id.*)  This claim appears to be directed both to the waiver of indictment and the waiver of Petitioner's right to a jury trial at which the Government would be required to prove guilt beyond a reasonable doubt.

Petitioner argues that counsel told him that if he did not waive indictment, more charges would be filed against him, and that if he went to trial, he would be found guilty and be subject to life in prison.  (Reply at 3-4.)  He maintains that he was under duress and that medication impaired his judgment.  (*Id.* at 4.)  Finally, as part of his reply in support of this motion, Petitioner attempts

---

[3] Even if Petitioner had made such an allegation, Petitioner would be unable to prevail on his claim.  Given Petitioner's unchallenged confession, any suggestion that Petitioner would have prevailed in a trial is unpersuasive.

to advance an argument under *Alleyne v. United States*, 133 S. Ct. 2151 (2013), in connection with his claim of ineffective assistance of counsel.  (*Id.*)

Preliminarily, Petitioner's claim is procedurally defaulted because Petitioner raised the claim for the first time in a collateral challenge.  (Response, ECF No. 62 at 28.)  *See Bousley*, 523 U.S. at 622.  In addition, the claim of ineffective assistance of counsel fails on the merits because the record lacks evidence to support Petitioner's contention that counsel misadvised him as to the evidentiary standard applicable to either the grand jury or at trial.  The record also does not support any suggestion that Petitioner was prejudiced as the result of any alleged incorrect advice.

First, in a chambers conference held before the waiver of indictment and the plea hearing, counsel represented to the Court that he had met with Petitioner and had "been over everything" with him.  (Plea Tr., ECF No. 37 at 4.)  Furthermore, in the hearing, Petitioner responded affirmatively when asked whether counsel had explained the proceeding and whether Petitioner understood why he was in Court.  (*Id.* at 8.)  The Court found Petitioner competent to waive indictment and engage in a Rule 11 proceeding.  (*Id.* at 9.)  In response to the Court's questions, Petitioner told the Court that he understood the charges, that he had had adequate time to discuss them with counsel, and that counsel had answered all of his questions.  (*Id.*)  Counsel told the Court he was satisfied that Petitioner understood the nature and significance of the charges in the information, and that counsel approved the waiver of indictment.  (*Id.*)

The Court explained to Petitioner that he had a constitutional right to require that the matter proceed only on indictment by a grand jury - upon the grand jury's finding of probable cause to believe that Petitioner committed the offenses.  (*Id.* at 10.)  The Court explained the grand jury process and told Petitioner that "[i]t's entirely possible that a grand jury might decide not to indict you at all."  (*Id.*)  The Court told Petitioner that he could waive his right to a grand jury if he so

chose.  (*Id.*)  The Court asked Petitioner whether he had discussed the waiver of indictment with counsel and whether anyone had made any threats or promises to him to get him to waive his right of indictment.  (*Id.* at 11.)  Petitioner answered that he had discussed it with counsel, and he had received no threats or promises.  (*Id.*)  The Court then asked counsel whether he was aware of any reason why the Court should not permit Petitioner to waive indictment, and counsel answered that he was not aware of any such reason.  (*Id.* at 11.)  Petitioner signed the waiver-of-indictment form, which states: "I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year.  I was advised in open court of my rights and the nature of the proposed charges against me. . . .  After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information."  (Form, ECF No. 22; Plea Tr. at 11.)  The Court then found that Petitioner had knowingly and voluntarily waived his right of indictment by a grand jury.  (Plea Tr. at 11.)  The record plainly establishes that the grand jury and indictment process was thoroughly discussed with Petitioner, and that the Court logically concluded that Petitioner knowingly and voluntarily waived indictment.

The record also lacks support for Petitioner's contention that counsel improperly advised him about his right to a jury trial and his right to be convicted only upon evidence proven beyond a reasonable doubt.  Petitioner told the Court in the plea colloquy that counsel had explained the charges and the possible penalties.  (*Id.* at 13.)  The Court then explained the penalties, and Petitioner told the Court that he understood.  (*Id.* at 13-14.)  The Court explained Petitioner's jury trial rights, including that at trial he would be presumed innocent, and the Government would have the burden of proving that Petitioner was "guilty beyond a reasonable doubt."  (*Id.* at 14-15.)  The Court also explained Petitioner's other trial-related rights, and explained that if the Court accepted Petitioner's guilty pleas, Petitioner would be giving up his right to a trial and the other trial-related

10

rights, including his right to appeal "except for very limited circumstances." (*Id.* at 15-16.) Petitioner acknowledged that he understood the Court's assertions. (*Id.* at 16.)

The Court then conducted the remainder of the colloquy, in which both counsel and Petitioner told the Court that counsel had reviewed the prosecution version with Petitioner, and Petitioner informed the Court that he understood the prosecution's version and believed it to be true to his personal knowledge, except for certain portions that related events at which Petitioner was not present. (*Id.* at 18.)[4] The Court described the plea agreement to Petitioner and explained that the Court was not bound by the parties' plea agreement. (*Id.* at 24.) The Court further advised Petitioner that under the plea agreement, if the Court's sentence was outside the range of 188 to 235 months, Petitioner would be permitted to withdraw his guilty plea. (*Id.* at 23-24, 29.) The Court explained that Petitioner would be giving up his right to appeal from the conviction and from any sentence that did not exceed 235 months. (*Id.* at 26-27, 30.) Petitioner told the Court that he understood and that he had signed the plea agreement voluntarily. (*Id.* at 27-28.)

Not insignificantly, Petitioner does not allege in his section 2255 motion the specific information that he contends was inaccurate. In fact, Petitioner's statements during the Court proceedings demonstrate that he did not have any concerns about the information that he received and that the information was accurate. That is, during the waiver of indictment proceeding and in the plea hearing, Petitioner stated that he understood the charges, the proceedings, and his rights, and that he was acting voluntarily and with knowledge of his rights. Those statements are presumed to be valid; a "petitioner must present valid reasons why he should be relieved of his statements at a Rule 11 hearing in order to 'overcome the presumption of regularity which the

---

[4] Counsel pointed out at the chambers conference that the prosecution version alleged that there were 50 persons on board the USS Miami when Petitioner set the May 23, 2012, fire and that Petitioner would not have personal knowledge of that fact. (Plea Tr., ECF No. 37 at 4, 18.)

record . . . imports.'" *Ouellette v. United States*, 862 F.2d 371, 374 (1st Cir. 1988) (quoting *Walker v. Johnston*, 312 U.S. 275, 286 (1941).  Petitioner presents no reasons why he should not be bound the statements he made regarding his waiver of indictment and his guilty plea.

Petitioner's *Alleyne* claim also lacks merit.[5]  *Alleyne* does not apply when "all elements of [the petitioner's] crimes of conviction . . . were admitted as part of the guilty pleas and [the petitioner was not] sentenced based on a mandatory minimum sentence."  *United States v. Ramírez–Negrón,* 751 F.3d 42, 44 (1st Cir. 2014).   Here, Petitioner was not sentenced based on a statutory minimum mandatory sentence; instead, Petitioner was convicted of violating 18 U.S.C. § 81, which has no minimum sentence, but which carries a maximum sentence of 25 years, or a maximum sentence of life in prison if the life of any person was placed in jeopardy.  The judicial factfinding was employed to determine the guidelines range, and not to impose a mandatory minimum sentence.   "[F]actual findings made for purposes of applying the Guidelines, which influence the sentencing judge's discretion in imposing an advisory Guidelines sentence and do not result in imposition of a mandatory minimum sentence, do not violate the rule in *Alleyne.*"  *Id.* at 48.

### 3.  Claim of ineffective assistance of counsel regarding improper advice as to mens rea element of the crimes (Ground Four).

Petitioner alleges that counsel failed to inform him of the mens rea element of the crimes before he pled guilty.  (Motion at 8.)  In essence, Petitioner alleges that because counsel failed to consult with Petitioner about his psychological condition and his medications, counsel overlooked a possible defense that mens rea was lacking.  (*Id.*)

---

[5] In *Alleyne v. United States,* 133 S. Ct. 2151 (2013), the Supreme Court "extended the rule requiring a jury to find, beyond a reasonable doubt, any fact that increases a *maximum* statutory penalty to any fact that requires imposing a statutory *minimum* penalty." *United States v. Doe,* 741 F.3d 217, 233 (1st Cir.2013) (emphasis added) (citing *Alleyne,* 133 S.Ct. at 2160).

Petitioner's allegations are inconsistent with his acknowledgement in the hearing that counsel explained the charges to him and that he understood them.  (Plea Tr. at 9.)  Both Count I and Count II of the information asserted the mens rea element as Petitioner acting willfully and maliciously.  (Information at 1-2.)  Upon the Court's inquiry, counsel confirmed that he was satisfied that Petitioner understood the nature and significance of the charges contained in the information.  (Plea Tr. at 9.)   The Court also inquired whether Petitioner had seen and reviewed the prosecution version, which set forth the mens rea elements, and Petitioner stated that he had reviewed it with counsel and understood it.  (*Id.* at 18.)

Petitioner's statements are presumed valid, and he presents no allegations or evidence in his section 2255 motion to suggest that the statements are not valid.  *Ouellette*, 862 F.2d at 374.  In particular, he offers no evidence to support a claim of deficient performance by counsel.  Furthermore, because the Court explained the charges, and Petitioner responded that he understood the charges, Petitioner cannot demonstrate prejudice.

### 4.  Claim of ineffective assistance of counsel regarding failure to secure a psychological evaluation for pretrial detention and sentencing purposes (Ground Two).

Petitioner alleges that counsel failed to present information about Petitioner's mental illness at the pretrial detention hearing, and that counsel failed to seek a psychological evaluation for sentencing purposes.[6]

First, because section 2255, by its terms, applies only to claims regarding custody following sentencing, Petitioner's claim regarding pretrial detention is not cognizable under section 2255.

---

[6] Petitioner additionally cites to "Rule 35," in support of his argument that counsel was deficient for failing to press for a psychological evaluation of Petitioner.  Petitioner may be referring to Fed. R. Civ. P. 35, but that rule applies in civil rather than criminal proceedings, and it therefore is inapplicable to Petitioner's criminal case.

In addition, Petitioner's claim regarding the psychological evaluation at sentencing fails because the record establishes that counsel in fact presented a psychological evaluation to the Court at sentencing. (Petitioner's Sentencing Memorandum, ECF No. 40 at 6-7, 9-10, 12-13.)[7]  Counsel argued, based on the report of the psychologist, that Petitioner was at low risk for reoffending, that he was a good candidate for rehabilitation, that Petitioner felt significant remorse, and that he had a history of anxiety and depression for which he was prescribed medication.  (*Id.*)  Counsel included in the sentencing memorandum the psychologist's assessment that Petitioner had poor coping skills and a low tolerance for frustration.  (*Id.* at 12.)  Counsel specifically referenced the psychologist's report at the sentencing hearing.  (Sentencing Tr.. ECF No. 59  at 37, 40.)

Counsel also referenced Petitioner's psychological or mental health issues when he suggested that Petitioner's criminal conduct was not consistent with his character.   After explaining that Petitioner's sole criminal history was an OUI conviction at age 21 (*Id.* at 37-38), counsel informed the Court that from the second week of Petitioner's full-time employment at the Portsmouth Naval Shipyard, two years before Petitioner started the fires, his anxiety was identified as an issue, and he was receiving services from the Employee Assistance Program.  (*Id.* at 39.) Counsel explained that Petitioner was under treatment, including counseling and prescribed medications, for anxiety, panic attacks, and depression.  (*Id.*)  Counsel submitted a chronology showing that Petitioner left work on multiple occasions due to anxiety.  (*Id.*)  Counsel asked the Court to take into account Petitioner's mental health problems in sentencing.  (*Id.* at 44-46.)

---

[7] Additionally, the revised presentence investigation report contained information about Petitioner's mental health history.  Petitioner told the Court that he had reviewed the presentence investigation report with counsel and that Petitioner understood it and had permitted counsel to file no objections. (Sentencing Tr. at 3-4.)  The Court concluded on that basis that it was not necessary to have a hearing on the contents of the presentence investigation report.  (*Id.* at 4.)

Counsel's efforts were at least partially successful.  The Court acknowledged Petitioner's "history of mental health issues going back some time," but the Court also noted that there was no evidence of an "escalating mental health severity."  (*Id.* at 45.)  The Court specifically asked counsel what could have caused Petitioner to commit the crimes.  (*Id.*)  In response, counsel cited the medical record, which counsel argued in fact showed an escalation in Petitioner's anxiety and depression.  (*Id.* at 45-46.)[8]  When the Court asked counsel why Petitioner chose to light the fire in response to his anxiety, instead of simply going outside, counsel argued that the illogic of Petitioner's actions demonstrates that Petitioner's thinking was impaired at the time he set the fires and, therefore, he acted impulsively.  (*Id.* at 49-51.)  Counsel relied on the psychological evaluation to support his argument for a sentence at the low end of the range that the parties agreed to recommend to the Court.  (*Id.* at 52, 54.)

The record thus plainly establishes that Petitioner's counsel used a psychological evaluation to support the argument that Petitioner's mental health issues contributed to Petitioner's conduct.  Petitioner's contention, therefore, that counsel's performance was substandard for failing to secure a psychological evaluation lacks merit.

---

[8] The Government acknowledged that sentencing material supplied by Petitioner's counsel suggested that Petitioner's "anxiety and medication regimen may have played a large part in his actions."  (Sentencing Tr. at 25.)  The Government also argued, however, that the same materials reflect that Petitioner "knew he was not doing well emotionally at the time and he knew how to ask for help, and that he had sought professional help many times before."  (*Id.*)  The Government conceded that Petitioner had "limited criminal history and that, according to his friends and family, these crimes represent an aberration from his character and personality as known to them."  (*Id.* at 26.)  The Court asked the Government: "What's the significance [if] an individual sets a fire and then goes deeper into the ship?"  (*Id.* at 28-29.)  The Government responded that Petitioner "intended it to only be a distraction and that somebody would put it out and he'd get to leave the ship because people would be concerned about it and he'd be allowed to go home."  (*Id.* at 29.)  The Government said: "There's no question that we have no evidence that [Petitioner] intended to cause a $400 million fire."  (*Id.*)  The Government argued that the second fire, i.e., the one that Petitioner started on June 16, deserved greater punishment because it occurred after the destruction and injury caused by the first fire were made public, and it therefore "tells so much more about his state of mind and his disregard for other people," as well as Petitioner's potential for committing crimes in the future.  (*Id.* at 30-31.)

**5.   Claim of ineffective assistance of counsel regarding failure to pursue a downward variance at sentencing (Ground Five).**

Petitioner alleges that counsel was ineffective because he failed to seek a downward variance at sentencing based on Petitioner's mental health history.  (Motion at 10.)[9]  This claim is without merit because the plea agreement required both Petitioner and the Government to make a non-binding recommendation to the Court of a term of imprisonment within the guidelines range of 188-235 months.  (Plea Agreement at 2-3.)  Petitioner's plea would have been in jeopardy if counsel had argued for a downward departure.  Counsel thus was not deficient for failing to argue for a downward departure.

**6.   Claim of ineffective assistance of counsel regarding failure to inform Petitioner of anonymous letter (Ground Six/Motion to Add Ground).**

Petitioner filed a motion in July 2014 to add an additional ground alleging that counsel was ineffective because he failed to inform Petitioner of an anonymous letter addressed to Petitioner's father.  (Motion to Add Addendum, ECF No. 60.)  The anonymous letter essentially states that Petitioner's supervisor and the general foreperson harbored an animus toward Petitioner and targeted him for firing.  (Letter, ECF No. 60-1.)  Petitioner alleges that his father gave the letter to counsel before Petitioner pled guilty, but counsel did not tell Petitioner about the letter, and Petitioner's father only sent the letter to Petitioner after he was in prison.  (Motion, ECF No. 60 at

---

[9] Petitioner argues that counsel should have sought such a variance pursuant to U.S.S.G. § 5H1.1.  Section 5H1.1 relates to downward departures due to the age of the defendant which, according to counsel, was 24 at the time of the crimes.  (Sentencing Tr. at 37.)  It appears that Petitioner instead intended to make an argument under section 5H1.3, which relates to mental and emotional conditions and states in pertinent part: "Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."  To the extent that Petitioner intended to make an argument under section 5K2.13 for a downward departure based on diminished mental capacity, that provision by its terms is not applicable if "the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence."

1; Statement, ECF No. 60-2.)   Petitioner asserts that the letter constitutes "newly discovered evidence."   (Motion, ECF No. 60 at 1.)

The Government argues that this claim was not filed timely, and that it fails on the merits. (Response at 34.)   Petitioner argues that the letter "supports a conspiracy theory that the Petitioner's boss or foreman on the submarine wanted him to screw up so he could fire him." (Reply, ECF No. 64 at 4-5.)

Petitioner's recent claim was not filed timely under any of the provisions of section 2255(f).[10]   Petitioner did not satisfy the requirements of subsection 2255(f)(1) because he filed the new claim more than a year after the judgment of conviction became final.[11]   Furthermore, the claim does not relate back to the initial section 2255 motion, pursuant to Fed. R. Civ. P. 15(c), because it did not "[arise] out of the conduct, transaction, or occurrence set out−or attempted to be

---

[10] Section 2255(f) states:

A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

   (1) the date on which the judgment of conviction becomes final;

   (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

   (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

[11] When a defendant does not file a direct appeal of the conviction or sentence, the judgment becomes final fourteen days after the judgment of conviction was entered.  *See* Fed. R. App. P. 4(b)(1)(A) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after . . . (i) the entry of either the judgment or order being appealed[.]").  *See McKoy v. United States*, Nos. 2:09-cr-00056-DBH-1, 2:12-cv-00347-DBH, 2013 WL 530470, at *1, 2013 U.S. Dist. Lexis 19366, at *2-3 (D. Me. Jan. 4, 2013) (recommended decision, adopted Feb. 12, 2013).  The judgment was entered on March 15, 2013, and it was final fourteen days later, on March 29, 2013.  The one-year deadline, pursuant to section 2255(f)(1), expired one year after the judgment became final.  Petitioner did not file the new claim until July 7, 2014, *i.e.*, several months after the one-year deadline had passed.

set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).  "As the Supreme Court . . . made crystal clear, a petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Mayle v. Felix*, 545 U.S. 644, 655-57 (2005)).  Petitioner's claim that counsel failed to show him the anonymous letter is unrelated to the claims of ineffective assistance of counsel that Petitioner asserts in his initial section 2255 motion.

In addition, the Court "need not decide whether newly discovered evidence is a cognizable ground" for a section 2255 claim, pursuant to section 2255(f)(4), because Petitioner "has failed to show that the new evidence would result in his acquittal."  *Moreno-Morales*, 334 F.3d at 149 (holding that the petitioner was not entitled to relief under section 2255 because even if he could demonstrate that newly discovered evidence was unavailable to him at trial, that he was duly diligent in trying to discover it, and that the evidence was material, he failed to demonstrate that the new evidence would have resulted in his acquittal).  Aside from Petitioner's allegations, there are no facts in Petitioner's filings that demonstrate that he could prove either that the anonymous letter was not available to him or that he was duly diligent in trying to discover it.  However, even if one assumed that Petitioner could prove those facts, he cannot demonstrate that the result of the case would have been different had he known about the letter before he pled guilty.  By the time of the guilty plea, Petitioner had admitted the crimes, and his admissions were corroborated by other evidence from the fire investigation.  Given the weight of the evidence against Petitioner,

evidence of an anonymous letter suggesting that Petitioner's supervisor harbored an animus toward him does not meet the requirements of section 2255(f)(4). [12]

Because Petitioner cannot demonstrate that the result would have been different had he known about the letter earlier, Petitioner's claim also fails on the merits. Assuming that Petitioner could prove that counsel was aware of the anonymous letter before Petitioner pled guilty, counsel's performance, in advising Petitioner to plead guilty, would not have been substandard given the nature of the evidence against Petitioner.

### III.   CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. The recommendation is that the Court deny Petitioner's Motion to Add Addendum to Section 2255 Motion (ECF No. 60), and dismiss Petitioner's Section 2255 Motion (ECF No. 48). The recommendation is also that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

---

[12] Nor is any of the other provisions of 28 U.S.C. § 2255(f) applicable. Section 2255(f)(2) is not applicable because Petitioner has not presented any facts to suggest that the Government caused an impediment that precluded him from timely filing the motion. Subsection 2255(f)(3) is not applicable because Petitioner does not assert a right newly recognized by the Supreme Court.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison

Dated this 22nd day of April, 2015          U.S. Magistrate Judge